IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA TINOCO and
JESUS TINOCO,

    Plaintiffs,

vs.                                                                 Civ. No. 13-918 KG/LAM

DEPUTY JONATHAN BARRERAS,
DEPUTY JOHN DUFFY, DEPUTY DURAN,
DEPUTY MADISON, in their Individual
and Official Capacities, DONA ANA COUNTY
SHERIFF'S DEPARTMENT, BOARD OF
COUNTY COMMISSIONERS OF DONA ANA
COUNTY,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon County Defendants' Motion to Dismiss or Alternatively Motion for Partial Summary Judgment (Motion), filed on January 3, 2014, and a Notice of Erratum, filed on February 4, 2014, which notes that all Defendants join in the Motion.[1] (Docs. 9 and 15). Plaintiff responded on January 31, 2014, and Defendants replied on February 24, 2014. (Docs. 11 and 17). Having reviewed and considered Defendants' Motion and the accompanying briefs, the Court denies Plaintiffs' Fed. R. Civ. P. 56(d) request for further

---

[1] Although the Motion addresses the initial complaint, the Court subsequently allowed Plaintiffs to file a First Amended Complaint for Violations of Civil Rights, Personal Injury, Supervisory and Municipal Liability and Punitive Damages (First Amended Complaint) (Doc. 27). The Motion, however, is still applicable to the First Amended Complaint and the Court will, therefore, analyze the Motion as it pertains to that complaint. *See M.B. v. Islip Sch. Dist.*, 2015 WL 3756875, at *4 (E.D. N.Y.) (court can consider motion to dismiss in light of newly filed amended complaint). Furthermore, the Court will substitute the First Amended Complaint when a party refers to the initial complaint.

discovery, grants Defendants' Motion in part, and denies Defendants' request for an award of attorney's fees and costs.

*A. Background*

    *1. Summary of Material Facts*

This 42 U.S.C. § 1983 civil rights lawsuit arises from the seizure of Plaintiffs and the search of Plaintiffs' home. The following summary of material facts reflects the evidence in the record in the light most favorable to Plaintiffs.

On October 31, 2010, at about 11:06 p.m., Defendant Deputy Jonathan Barreras received a dispatch call about a man shooting a rifle in the air.[2] (Doc. 9-1) at ¶ 8. A few minutes later, dispatch reported that a man was reportedly walking down Vado Drive with a rifle. *Id*. at ¶ 9. Defendant John Duffy and other deputies joined Defendant Barreras to look for this man. *Id.* at ¶¶ 12-14. The reporting party subsequently directed the deputies to a house and informed the deputies that the gun was fired during a fight or to break up a fight. *Id.* The deputies then arrived at the identified house and surrounded it. *Id.* at ¶ 15. That house belongs to Plaintiffs' son. *Id.*

The evening of October 31, 2010, Plaintiffs were visiting their son at his house. (Doc. 11-1) at ¶ 2. Around midnight, deputies banged on the door of the residence. *Id*. at ¶ 3. Plaintiff Maria Tinoco answered the door. *Id.* Defendants Barreras and Duffy asked Plaintiff Maria Tinoco to come outside to speak with them, which she did. *Id.* at ¶ 4. The deputies inquired who was shooting guns. *Id.* Plaintiff Maria Tinoco responded that no one was shooting guns,

---

[2] Defendant Barreras now goes by the name Jonathan Gutierrez. (Doc. 9-1) at ¶ 1. To avoid confusion, the Court will continue to refer to Gutierrez as Defendant Barreras.

and there were no guns.[3]  *Id.*  During this conversation, Defendant Barreras saw movement inside the house and began to go towards the house.[4]  (Doc. 9-1) at ¶ 19.  The deputies told Plaintiff Maria Tinoco that they wanted to search the house because of the shooting.  (Doc. 11-1) at ¶ 7.  Plaintiff Maria Tinoco responded that the deputies would have to get a search warrant to search the house.  *Id.* at ¶ 5.

The deputies then began yelling at Plaintiff Maria Tinoco and threatened her, so she decided to go back into the house.[5]  *Id.*  As Plaintiff Maria Tinoco entered the house, Defendant Duffy pushed her to the ground,[6] put his hand on her head, pushed her face down, placed a knee on her back, twisted her left arm, and put her arm behind her back.[7]  *Id.* at ¶¶ 5-6.  Defendants Barreras and Duffy subsequently handcuffed Plaintiff Maria Tinoco, dragged her from the house, and placed her in a patrol unit, which was a safe distance from the house.  (Doc. 9-1) at ¶ 29; (Doc. 11-1) at ¶ 6.  At some point, Plaintiff Jesus Tinoco came outside to see what was going

---

[3] Defendant Barreras contends that he and Defendant Duffy interviewed two females outside the house.  (Doc. 9-1) at ¶¶ 15-17.  According to Defendant Barreras, one female stated that there were three males in the house, including Plaintiff Jesus Tinoco, who had fired the gun.  *Id.* at 17.

[4] Defendant Barreras claims that Plaintiff Maria Tinoco told Defendant Duffy there was no one in the house.  (Doc. 9-1) at ¶ 18.  Defendant Barreras also observed that Plaintiff Maria Tinoco became "increasingly aggressive."  *Id.*

[5] According to Defendant Barreras, Defendant Duffy told Plaintiff Maria Tinoco not to re-enter the home.  (Doc. 9-1) at ¶ 22.

[6] Plaintiffs allege, however, in the First Amended Complaint that Defendant Duffy grabbed Plaintiff Maria Tinoco from behind, thereby causing her to fall to the ground.  (Doc. 27) at ¶ 11.

[7] Defendant Barreras states that Defendant Duffy tried to grab Plaintiff Maria Tinoco's arm to keep her from re-entering the house, but she pulled away "causing herself and Deputy Duffy to fall into the threshold of the residence."  (Doc. 9-1) at ¶¶ 22 and 23.  Defendant Barreras alleges that he then stepped into threshold of the house to protect Defendant Duffy.  *Id.* at ¶ 24.

on.[8]  (Doc. 11-1) at ¶ 7.  Plaintiff Jesus Tinoco was then handcuffed and also placed in a patrol unit.  (Doc. 9-1) at ¶ 31.  Both Plaintiffs were released at the scene but issued citations for resisting, evading, and obstructing an officer.  *Id*. at ¶ 34.  Sometime that night, deputies searched Plaintiffs' son's home.  (Doc. 11-1) at ¶ 8.

While this incident was occurring, Plaintiffs' daughter, Crystal Olivas, came out of a neighboring home to see what was going on.  (Doc. 11-2) at ¶ 3.  Olivas, who was pregnant at the time, and her small children lived at Plaintiffs' home, which was apparently located near the home of Plaintiffs' son.  *Id.* at ¶¶ 1, 5.  Deputies asked Olivas where the guns were located.  *Id.* at ¶ 5.  Olivas replied that she did not know anything about guns.  *Id.*  Then, a deputy asked Olivas to allow him to search Plaintiffs' home and stated that if Olivas did not agree to the search he would arrest her.  *Id.*  Olivas was worried about her mother, children, and unborn baby, so she agreed to the search.  *Id.*

   2. *The First Amended Complaint*

In Count I, Plaintiffs allege that the individual Defendants unlawfully entered Plaintiffs' home in violation of the Fourth and Fourteenth Amendments.  The factual allegations, however, suggest that only Defendants Barreras and Duffy unlawfully entered Plaintiffs' son's home.  (Doc. 27) at ¶¶ 9-10, 20-21.  Plaintiffs clarify in their response to the Motion that the object of the unlawful entry claim is their home, not their son's home.  (Doc. 11) at 11.

---

[8] Defendant Barreras claims that an unknown male ran towards Defendant Duffy "with a clenched, cocked, [sic] fist."  (Doc. 9-1) at ¶ 25.  Defendant Barreras contends that he got between the male and Defendant Duffy and ordered the male onto the ground, which the male did.  *Id.* at ¶ 26.  "At the same time, another male who matched the description of the individual with the gun [presumably, Plaintiff Jesus Tinoco] stepped from the back of the house…."  *Id.* at ¶ 27.  According to Defendant Barreras, he ordered Plaintiff Jesus Tinoco to come out with his hands up.  *Id.* at ¶ 31.  Plaintiff Jesus Tinoco complied with the order.  *Id.*

In Count II, Plaintiffs allege that the individual Defendants unlawfully seized Plaintiffs in violation of the Fourth and Fourteenth Amendments. In Count III, Plaintiff Maria Tinoco alleges that Defendant Duffy used excessive force on her in violation of the Fourth and Fourteenth Amendments. In Count IV, Plaintiffs allege that the "practices, policies, customs and procedures of Defendants Dona Ana County Sheriff's Department and the Board of County Commissioners for Dona Ana County" (collectively, County Defendants) caused the above alleged constitutional violations and that the individual Defendants' unlawful actions were the result of the County Defendants' "improper and inadequate supervision, education and training…." (Doc. 27) at ¶¶ 29 and 30. In addition, Plaintiffs contend that the County Defendants are vicariously liable for the actions of the individual Defendants. Finally, Plaintiffs allege in Count V punitive damages claims against all of Defendants.

Defendants move under both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(a) to dismiss Counts I through IV. Defendants also seek an award of attorney's fees and costs. Plaintiffs oppose dismissal of their claims.

B. *Standards of Review*

    1. *Rule 12(b)(6)*

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state claim upon which relief can be granted, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

*2. Rule 56(a)*

Defendants assert qualified immunity for the individual Defendants under a Rule 56(a) motion for summary judgment.  When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014).  Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity.  *Id*.  At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."  *Id.*

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).  Whether a defendant's conduct is objectively reasonable is a legal question

although a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Id*. Finally, the Tenth Circuit Court of Appeals instructs that

> [i]f the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

C. Discussion

   1. *Preliminary Matters*

      a. *Plaintiffs' Rule 56(d) Request for Discovery*

Pursuant to Rule 56(d), Plaintiffs request that the Court allow them to engage in discovery in order to oppose the Motion.[9] Rule 56(d)(2) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … allow time to … take discovery…." The Tenth Circuit explains that

> [t]he party seeking to enlarge the discovery period under this rule "must present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts. The [party] must also explain how additional time will enable [her] to rebut the movant's allegations of no genuine issue of material fact.'" *Arciero,* 741 F.3d at 1116 (quoting *Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir.2006)); *see also Been v. O.K. Indus., Inc.,* 495 F.3d 1217, 1235 (10th Cir.2007) ("[A] party at a minimum must ask the court to refrain from acting on the summary judgment request until additional discovery can be conducted." (internal quotation marks omitted)). We expect Rule 56(d) motions to be robust, and we have observed that "[an] affidavit's lack of specificity" counsels against a finding that the district court abused its discretion in denying a request

---

[9] On April 8, 2014, the Magistrate Judge stayed discovery pending a ruling on the Motion and specifically noted that the District Judge still needed to resolve the Rule 56(d) issue. (Doc. 25).

7

for additional discovery under the rule. *Trask,* 446 F.3d at 1042. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015). In this case, Plaintiffs have submitted neither an affidavit nor a declaration in support of their Rule 56(d) request. Moreover, Plaintiffs' request for discovery is not sufficiently specific. For these reasons, the Court denies Plaintiffs' Rule 56(d) request for discovery.

### b. County Defendants' Standing to File the Motion on Behalf of All Defendants

Plaintiffs argue that the County Defendants do not have standing to file the Motion on behalf of the individual Defendants. The County Defendants originally filed the Motion on behalf of themselves, but also argued in favor of dismissing the claims against the individual Defendants, who had not yet been served with the initial complaint. The individual Defendants, however, have since waived formal service, have representation, and answered the initial complaint. On February 4, 2014, Defendants filed a Notice of Erratum to provide notice that all of Defendants join in the Motion. (Doc. 15). In light of these circumstances, the issue of lack of standing is moot.

### 2. Plaintiffs' Claims[10]

### a. The Claims Against Defendants Deputies Duran and Madson[11]

Defendants argue first that the claims against Defendants Duran and Madson should be dismissed under Rule 12(b)(6). Defendants contend that the First Amended Complaint fails to allege any facts which show that Defendants Duran and Madson violated Plaintiffs' constitutional rights. In fact, the First Amended Complaint only includes Defendants Duran and Madson within the collective "Defendants" when describing the factual allegations setting forth

---

[10] The Court addresses the claims in the order presented in the Motion.

[11] Defendants note that Defendant Madison's correct name is "Madson." (Doc. 5-1) at 11.

the alleged constitutional violations in Counts I and II.

"In the context of § 1983 cases involving multiple defendants, 'it is particularly important ... that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'" *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 986 F. Supp. 2d 1249, 1254-55 (W.D. Okla. 2013) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original)).  Here, Plaintiffs have failed to plead what specific actions Defendants Duran and Madson took against Plaintiffs. Without that specific pleading, the Court cannot reasonably infer from the First Amended Complaint that Defendants Duran and Madson violated Plaintiffs' constitutional rights. Plaintiffs have, thus, failed to plead plausible claims against Defendants Duran and Madson. Plaintiffs' claims against Defendants Duran and Madson will be dismissed without prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The ensuing references to individual Defendants will, therefore, not include Defendants Duran and Madson.

### b. The Claims Against the County Defendants (Count IV)

Next, Defendants argue that the supervisory/municipal liability claims against the County Defendants should also be dismissed under Rule 12(b)(6) because Plaintiffs do not identify any deficient County policies, customs, supervisors, or training programs.  Although "Plaintiffs agree with the essence of the law cited by Defendants' Motion regarding municipal and vicarious liability of law enforcement agencies for the wrongful acts of its law enforcement officers," Plaintiffs argue that the County Defendants must set forth specific facts which show that they are entitled to have the claims against them dismissed. (Doc. 11) at 10.  In support of their argument, Plaintiffs cite a District of New Mexico case which refers to the summary judgment

standard. Here, on the other hand, Defendants move to dismiss the claims against the County Defendants under Rule 12(b)(6), which does not require the County Defendants to set forth any facts and which relies, instead, on the allegations contained within the four corners of the First Amended Complaint.[12]

Having reviewed the factual allegations in the First Amended Complaint in the light most favorable to Plaintiffs and accepting those allegations as true, the Court determines that Plaintiff has not alleged sufficient facts from which the Court can reasonably infer that the County Defendants are liable for the actions of the individual Defendants. Plaintiffs merely allege legal theories against the County Defendants without a factual basis. Count IV is, therefore, subject to dismissal without prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

        *c. The Claim for Unlawful Entry (Count I)*

Next, Defendants argue that the individual Defendants are entitled to summary judgment on the unlawful entry claim on the basis of qualified immunity. The Motion specifically addresses the alleged unlawful entry into Plaintiffs' son's home. Plaintiffs, however, contend that the object of the unlawful entry claim is Plaintiffs' home, not their son's home. (Doc. 11) at 11. The confusion lies in the First Amended Complaint which seems to describe an entry into Plaintiffs' son's home. Count I, however, alleges that the unlawful entry was into Plaintiffs' home. Considering the confusing state of the allegations in the First Amended Complaint on the unlawful entry claim, the proper analysis for dismissal would be under Rule 12(b)(6), not Rule 56(a). As pled in the First Amended Complaint, the unlawful entry claim based on entry into

---

[12] Plaintiffs further assert that they are entitled to Rule 56(d) discovery with respect to the supervisory/municipal liability claims. As decided above, Plaintiffs are not entitled to Rule 56(d) discovery. Moreover, discovery is not pertinent to a Rule 12(b)(6) motion which is restricted to an examination of the allegations contained within the First Amended Complaint.

Plaintiffs' home is not supported by any factual allegations.  Accordingly, the Court will dismiss Count I under Rule 12(b)(6) without prejudice for failure to state a plausible claim.

### d. The Claims for Unlawful Seizure (Count II)

The individual Defendants, likewise, assert that they are entitled to summary judgment on the unlawful seizure claims on the basis of qualified immunity.  Plaintiffs bring these claims under both the Fourth and Fourteenth Amendments.  It is well-established that courts examine the constitutionality of an initial seizure under the Fourth Amendment and not the Fourteenth Amendment.  *See Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004).  Consequently, the Court dismisses with prejudice the Fourteenth Amendment unlawful seizure claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs also contend that the individual Defendants unlawfully arrested them without probable cause in violation of the Fourth Amendment.  Defendants do not argue that the individual Defendants had probable cause to arrest Plaintiffs.  Instead, Defendants assert that the individual Defendants were justified in seizing Plaintiffs to minimize any risk of harm to the deputies and to the public.  Defendants cite *Muehler v. Mena* in support of their argument.  544 U.S. 93 (2005).  That case, however, is distinguishable because, unlike this case, it involved a detention during the execution of a search warrant for weapons.  Thus, the Court looks to general Fourth Amendment seizure law for guidance.

Under Fourth Amendment law, there are "three categories of police-citizen encounters: consensual encounters, investigative stops, and arrests." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).  The issue in this case is whether seizing Plaintiffs was justified as either an investigative detention (a *Terry* stop) or an unlawful arrest without probable cause.  An officer justifiably conducts a *Terry* stop when the officer has a reasonable articulable suspicion that a

11

crime is being committed. *Id.* (citing *United States v. Sokolow,* 490 U.S. 1, 7 (1989)). "A detention ceases to be a *Terry* stop and becomes an arrest if it continues for an excessive time or closely resembles a traditional arrest." *Id.* at 1192 (citing *Hiibel v. Sixth Judicial Dist. Ct. of Nev.,* 542 U.S. 177, 186 (2004)). Although the Tenth Circuit has held that the use of handcuffs generally exceeds the scope of a *Terry* stop, the Tenth Circuit has approved "takedowns" and handcuffing during *Terry* stops to "maintain the status quo" or "to protect [officers'] personal safety," if "the circumstances reasonably warrant such measures." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051-52 (10th Cir. 1994).

In this case, although Plaintiff Maria Tinoco denied gun fire or the presence of guns, a reasonable jury, viewing the evidence in the light most favorable to Plaintiffs, could find that there had been a report of gunfire involving a fight and the reporting party directed the individual Defendants to Plaintiffs' son's home. No reasonable jury could find that reasonable officers did not have reasonable suspicion that a crime was being committed, namely the petty misdemeanor crime of negligent use of a deadly weapon. *See* NMSA 1978, § 30-7-4 (2004 Repl. Pamp.). Hence, the individual Defendants were justified in detaining Plaintiffs pursuant to a *Terry* stop to investigate the crime of negligent use of a deadly weapon. The question then is whether circumstances reasonably warranted Defendant Duffy's use of forceful techniques and the use of handcuffs to effect the detentions. In Plaintiffs' version of the facts, Plaintiff Maria Tinoco does not assert that any of the individual Defendants asked her not to re-enter her son's home. Instead, she claims that deputies were yelling at her and threatening her. Moreover, the individual Defendants had no reason to believe that Plaintiff Maria Tinoco had shot the rifle or was otherwise armed and dangerous. Under Plaintiffs' version of the facts, there was also no reason to believe that Plaintiff Jesus Tinoco was armed and dangerous or otherwise

uncooperative with the deputies. A reasonable jury could find that these circumstances did not reasonably warrant pushing Plaintiff Maria Tinoco down and handcuffing both Plaintiffs and placing them in the back of a patrol unit. Consequently, a reasonable jury could find that the *Terry* detention evolved into an arrest for which the individual Defendants needed probable cause. The individual Defendants, however, do not contend that they had probable cause to arrest Plaintiffs; the individual Defendants simply maintain that they detained Plaintiffs for officer and public safety reasons. Under these circumstances, Plaintiffs have demonstrated that a reasonable jury could find facts supporting a violation of the Fourth Amendment right to be free from unreasonable seizures.

Next, the Court determines that it was clearly established at the time of this incident that Plaintiffs had a right not to be detained in a manner that amounted to an unlawful arrest. Accordingly, the next qualified immunity issue is whether a reasonable officer would understand that his actions violated that right. "When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1191 (10th Cir. 2007). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th Cir. 2007). Here, the question is whether the individual Defendants could have reasonably believed probable cause existed to arrest Plaintiffs. *See Morris,* 672 F.3d at 1194.

The fact that the individual Defendants believed that they had detained Plaintiffs for officer and public safety purposes demonstrates that the individual Defendants did not think that they had probable cause to arrest Plaintiffs. *See* (Doc. 9-1) at ¶¶ 29 and 33. On the other hand,

one could attempt to argue that a reasonable officer had probable cause to arrest Plaintiffs for resisting, evading, and obstructing officers, a petty misdemeanor crime for which Plaintiffs were issued citations. *See* NMSA 1978, § 30-22-1 (2004 Repl. Pamp.) Based on Plaintiffs' version of the facts, no individual Defendant asked Plaintiff Maria Tinoco to refrain from re-entering her son's home and Plaintiff Jesus Tinoco actually cooperated with the deputies. In that situation, Plaintiffs did not resist an officer. In addition, Plaintiff Maria Tinoco's decision to return to her son's home because the individual Defendants did not have a search warrant and were yelling threats at her does not amount to resisting, evading, or obstructing an officer. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) ("Under New Mexico law, '[r]esisting, evading, or obstructing an officer primarily consists of physical acts of resistance."). Moreover, Plaintiff Maria Tinoco's insistence on a search warrant for her son's home did not actually impede or obstruct the deputies' search of that home, which, in fact, occurred. *See also id.* at 1216-17 (New Mexico courts have found abusive speech to constitute resisting, evading, or obstructing an officer, but not "merely evasive" speech."). A reasonable officer could, therefore, not believe that he had probable cause to arrest Plaintiffs for resisting, evading, or obstructing an officer. Thus, Plaintiffs have met the second prong required to defeat a defense of qualified immunity.

      Although Plaintiffs have demonstrated that the individual Defendants are not entitled to qualified immunity, the burden now shifts back to the individual Defendants to prove that "no genuine issues of material fact" exist and that they are entitled to judgment as a matter of law. In this case, there are several unresolved disputes of historical fact about the individual Defendants' encounter with Plaintiffs and others which affect whether the individual Defendants have a qualified immunity defense with regard to the unlawful seizure claims. Accordingly, the

individual Defendants have not shown that they are entitled to summary judgment on the unlawful seizure claims. The Motion is, therefore, denied as to the Count II Fourth Amendment unlawful seizure claims.

### e. The Excessive Force Claim (Count III)

Finally, the individual Defendants assert that Defendant Duffy is entitled to summary judgment on Plaintiff Maria Tinoco's excessive force claim on the basis of qualified immunity. As with the unlawful seizure claims, the Court notes that Plaintiff Maria Tinoco brings the excessive force claim under both the Fourth and Fourteenth Amendments. It is well-established that courts examine the constitutionality of an excessive force claim occurring up to and including an arrest under the Fourth Amendment and not the Fourteenth Amendment. *See Estate of Booker v. Gomez,* 745 F.3d 405, 419 (10th Cir. 2014). Accordingly, the Court dismisses with prejudice the Fourteenth Amendment excessive force claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The issue in Fourth Amendment excessive force cases is whether, under the totality of the circumstances, an officer's use of force was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This test involves viewing the reasonableness of an officer's use of force from an "on-scene" perspective. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Factors to consider in determining if use of force was excessive include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or other, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham*, 490 U.S. at 396).

In this case, the crime at issue, negligent use of a deadly weapon, is a petty misdemeanor and, thus, a reasonable jury could find that the shooting is not a "severe" crime. Moreover,

viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that Plaintiff Maria Tinoco did not pose an immediate threat to the safety of the deputies or to others nor was she actively resisting arrest or attempting to evade arrest by flight. A reasonable jury could find, therefore, that Defendant Duffy's physical handling of Plaintiff Maria Tinoco was unreasonable under the totality of the circumstances and, consequently, excessive. Thus, Plaintiffs have shown that Defendant Duffy violated Plaintiff Maria Tinoco's Fourth Amendment right to be free from excessive force.

Furthermore, there is no question that the right to be free from excessive force was clearly established at the time of this incident. Defendant Duffy, therefore, must show that he acted in an objectively reasonable manner when he allegedly pushed Plaintiff Maria Tinoco to the ground. Defendant Duffy has, however, failed to carry that burden. Hence, Plaintiffs have met the second prong necessary to defeat qualified immunity.

Now that Plaintiffs have shown that Defendant Duffy is not entitled to qualified immunity on the excessive force claim, the burden shifts back to Defendant Duffy to prove that "no genuine issues of material fact" exist and that he is entitled to judgment as a matter of law. Here, however, there are many unresolved disputes of historical fact about Defendant Duffy's encounter with Plaintiffs which affect whether Defendant Duffy has a qualified immunity defense with respect to the excessive force claim. Consequently, Defendant Duffy has failed to demonstrate that he is entitled to summary judgment on the excessive force claim. The Motion is, therefore, denied as to the Count III Fourth Amendment excessive force claim.

### 3. *Defendants' Request for an Award of Attorney's Fees and Costs*

Because Defendants did not fully prevail on their Motion and the Motion raised complex issues which Plaintiffs competently responded to, the Court denies Defendants' request for an

award of attorney's fees and costs.

    IT IS ORDERED that

    1. Plaintiffs' request for Rule 56(d) discovery is denied;

    2. Defendants' Motion to Dismiss or Alternatively Motion for Partial Summary Judgment (Docs. 9 and 15) is granted in part;

    3. Plaintiffs' claims against Defendants Duran and Madson will be dismissed without prejudice;

    4. Count I of the First Amended Complaint will be dismissed without prejudice;

    5. the Fourteenth Amendment claim in Count II of the First Amended Complaint will be dismissed with prejudice;

    6. the Fourteenth Amendment claim in Count III of the First Amended Complaint will be dismissed with prejudice;

    7. Count IV of the First Amended Complaint will be dismissed without prejudice; and

    8. Defendants' request for an award of attorney's fees and costs is denied.

_____
UNITED STATES DISTRICT JUDGE